J. E. MOORE, CORONER, APPELLANT, V. BOX BUTTE COUNTY, APPELLEE.

FILED MARCH 21, 1907.   No. 14,739.

1. **Coroners: INQUESTS: JURISDICTION.** Jurisdiction to hold an inquest is conferred upon a coroner by his finding and custody in his county of the body of a person who has apparently come to his death by violent, mysterious or unknown means, and such jurisdiction is not defeated by the mere fact that the violence was inflicted or the death occurred in another county.

2. ———: ———: **FEES.** Whether, in any case, the circumstances are such as to require an inquest into the cause of the death of a person whose body is found within the county is a matter left very largely to the discretion of the coroner, and he will not be denied compensation for his services in holding such an inquest in the absence of a showing that he has acted in bad faith.

3. ———: ———: **JURY AND WITNESS FEES.** Jurors and witnesses have no discretion justifying their disobedience to a summons by a coroner to attend upon an inquest held by him, and cannot be denied their fees, solely because it may afterwards appear to have been unnecessary.

APPEAL from the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*L. A. Berry,* for appellant.

*William Mitchell, contra.*

AMES, C.

Section 9164, Ann. St., reads as follows: "The coroner shall hold an inquest upon the dead bodies of such persons only as are supposed to have died by unlawful means. When he has notice of the dead body of a person, supposed to have died by unlawful means, found or being in his county, he is required to issue his warrant to a constable of his county, requiring him to summon forthwith six lawful men of the county to appear before the coroner, at a time and place named in the warrant." In May, 1905, a man named Pepernot was run over and killed by one of the trains of the Chicago, Burlington & Quincy Railway Company. His body was put upon the train and carried to the town of Alliance, in Box Butte county, where it was left. The fact came to the knowledge of the appellant, who was coroner of the county, and who thereupon impaneled a jury and summoned witnesses for the making of an inquest. The jury, after hearing testimony and inquiring into the matter, returned a verdict to the effect that the man had come to his death by accidental means, and without the fault or negligence of any one other than himself. He was a stranger, and, so far as is known, wholly destitute of money or property. The statute provides that in such cases the fees of the coroner, witnesses and jurors shall be paid by the county. Pursuant to this statute the coroner filed a claim with the county board for his own fees, and by some arrangement, which is not impeached or questioned, for those also of the witnesses and jurors. The board rejected the claim, and, upon appeal, the district court affirmed the order. From the judgment of affirmance the coroner appealed to this court.

The sole ground of objection by the county is that the accident causing the death of Pepernot occurred in Cheyenne county, at a distance of a few miles from the boundary line between it and Box Butte county, and that that fact was known to the coroner at or before the time

he impaneled the jury, and was proved upon the inquest. Counsel contends, therefore, that the coroner was without jurisdiction or duty in the premises, and that an inquest, if one was required at all, should have been held in and at the expense of Cheyenne county, but that, as it appeared that the death was caused by accidental means, no inquest was required anywhere. As to the latter contention, it seems to us sufficient to say that whether a death, caused by the conduct of another or of others, in this case the railway trainmen, is due to innocent accident, or to wrongful and unlawful negligence or malice, can only be ascertained, if at all, by inquiry more or less thorough, and that it is the principal function of coroners to make inquests for the purpose of discovering the facts in such cases. As respects the former of these objections, we think that, doubtless, when a coroner finds in his county the body of a person who has evidently come to his death by violent means, although he may have reason to suspect, or even may know, that the violence was inflicted outside his own county, he has a very wide discretion in determining whether the circumstances are such as to require an official investigation at his hands, and that, at least so far as jurors and witnesses are concerned, his determination of that question is final. They certainly have no discretion justifying disobedience to his summons. This precise point, under an almost exactly similar statute, was so decided by the supreme court of Iowa in *Finarty v. Marion County,* 127 Ia. 543. Whether the coroner would be denied compensation in a case in which "the facts presented to him were such that his own mind rejected the supposition that death had been caused by unlawful means," or in which he is charged "with bad faith which would amount to official corruption," that court leaves undecided, and so do we. That charge is not made in the case before us. As respects jurisdiction, pure and simple, we think that the finding and custody by the coroner within his county of the body of a person who has apparently come to his death by violence or mys-

terious or unknown means is sufficient to confer it. The place where the violence was committed or the death occurred may be the most significant fact to be ascertained, and for the purpose of discovering it an immediate inquiry may be in the highest degree important. Interminable delays might result from a practice which should require a preliminary determination of these facts before an inquest could be set on foot, or which should require the body to be transported to another and perhaps distant county before one could be begun.

For these reasons, we think the judgment of the district court is erroneous, and recommend that it be reversed and a new trial granted.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED.